IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| WAYNE BURGESS, DAVID DAVIS and DENISE FREY, individually, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 05-3275-CV-S-ODS |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

<u>ORDER AND OPINION (1) DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT, (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, AND (3) DENYING DEFENDANT'S MOTION TO STRIKE AS MOOT</u>

Pending are Plaintiffs' Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment. The former is denied and the latter is granted. In light of the Court's ruling, Defendant's Motion to Strike is denied as moot.

I. BACKGROUND

A. Procedural and Factual History

Burgess & Associates is an insurance agency that itself was an insured under a general commercial liability policy written by Defendant. Among the products sold by Burgess & Associates were viatical settlement contracts, which is an agreement to purchase the death benefit of another person. In this case, the viatical contracts sold by Burgess & Associates were for the benefits of individuals suffering from AIDS or who had tested HIV-positive.

In October 2001, some of the purchasers of these investments sued Burgess & Associates and some of its employees and agents (hereinafter the "Burgess Defendants"), including the Plaintiffs in this case. The case was filed in this court and

styled *Witte v. Burgess & Associates*, No. 01-3547-CV-S-GAF and was assigned to the Honorable Gary A. Fenner, a judge of this Court. The complaint (hereinafter the "Underlying Complaint") alleged American Benefits Group recruited financial planners, investment advisors and insurance agents to sell viatical contracts to investors/customers. The sales materials allegedly contained false representations about the safety and profitability of the investment, as well as other details. The sales representatives (including the Plaintiffs in this case) allegedly made additional misstatements and provided unsound advice regarding the soundness and wisdom of the investment. The investors asserted seven claims:

| | | |
|---|---|---|
| Count I | Violation of Federal Securities Laws |
| Count II | Violation of Missouri Securities Act: Sale of Unregistered Securities |
| Count III | Violation of Missouri Securities Act: Unregistered Broker-Dealers |
| Count IV | Violation of Missouri Securities Act: Fraud |
| Count V | Common Law Fraud |
| Count VI | Negligent Misrepresentation |
| Count VII | Breach of Fiduciary Duty |

Shortly after being served, Plaintiffs Wayne Burgess and Denise Frey retained Jeffery L. Dunn to represent them. David Davis – originally a Plaintiff in this case who subsequently dismissed his claims – retained Robert Freeman to represent him. Burgess sent a copy of the Underlying Complaint to Defendant, and in late November 2001 Defendant arranged for John Hammons, Jr., to represent the defendants in the Underlying Complaint. However, this representation was provided under a reservation of rights, and in January 2002, Defendant indicated it would no longer provide a defense and was denying coverage.

Judge Fenner granted a motion to compel arbitration filed on behalf of the Burgess Defendants, and the matter was arbitrated in January 2004. The effect of the Arbitrator's Award was to require the investors to assign "all right, title and interest in said viatical contract interests" to the Burgess Defendants, and for certain of the Burgess Defendants to pay money to the investors. The Burgess Defendants asked the Arbitrator to clarify the Award, but the request was denied because the Arbitrator

2

determined the parties agreed to a "standard" award and did not agree to a "reasoned" award. Accordingly, there was no basis for detailing the Arbitrator's findings or reasoning. In March 2005, Judge Fenner confirmed the Award over the Burgess Defendants' objections.

Plaintiffs filed this suit, alleging various theories and seeking various remedies stemming from Defendant's alleged obligation to provide a defense or indemnification with regard to the Underlying Complaint. Plaintiffs concede judgment should be entered against them on Count I, so further discussion of that theory is unnecessary. Plaintiffs' other claims (starting with Count II) are: (1) Defendant had a duty to defend against potential claims of personal injury, (2) Defendant had a duty to defend against potential claims of advertising injury, (3) Defendant had a duty to defend against potential claims of property damage, and (4) Defendant vexatiously refused to indemnify.

### B. Policy Provisions

Section II of the Policy protects the insured "against claims that result from injury to others, or damage to others' property." Section II is divided into three separate sections; Coverage C relates to medical payments and is not germane to this case. Coverage A and Coverage B are discussed further below.

### 1. Coverage A

Coverage A relates to "Bodily Injury and Property Damage Liability. "Property damage" is defined to include "physical injury to tangible property" and "loss of use of tangible property that is not physically injured." However, property damage that is "expected or intended from the standpoint of the insured" is not covered. In addition, "property damage arising out of the rendering of or the failure to render professional services by any insured, who is a(n) . . . insurance agent" are not covered.

### 2. Coverage B

3

Coverage B addresses "Personal Injury and Advertising Injury Liability" and declares Defendant "will pay those sums that the insured becomes legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies" but, in the case of personal injury, only if the personal injury is "caused by an offense arising out of the conduct of your business excluding advertising, publishing, broadcasting or telecasting done by or for you." Thus, "personal injury" caused by "advertising" is not covered.

The term "advertising" is defined to mean any oral, written or graphic statement made by or at the direction of the insured in connection with the solicitation of business that is distributed in "newspapers, magazines, handbills, signs, catalogs, letters, or on radio or televison." However, it does not include material printed on or contained in a label, tag, package, or similar material "attached to, accompanying or forming any part of the merchandise, goods, products or services sold." Despite its use of the word "advertising," the phrase "advertising injury" is separately and specifically defined to mean an injury caused by (1) slander, libel, or disparagement of another's goods, products or services, (2) a violation of someone's right to privacy, (3) misappropriation of business ideas, or (4) infringement of copyright, title or slogan.

"Personal injury" is also specifically defined, and consists of injuries other than those caused by (1) false arrest, detention or imprisonment, (2) malicious prosecution, (3) wrongful entry or eviction, or a similar invasion of right to occupancy of a dwelling or other premises by or on behalf of the owner, landlord, or lessor, (4) oral or written materials that slanders, libels, or disparages, and (5) oral or written material that violates a person's right to privacy.

The policy also excludes certain injuries. As relevant to this case, the policy excludes coverage for all personal or advertising injury arising from (1) oral or written publications where the insured knows of its falsity, (2) a willful violation of statute or ordinance, and (3) failure to render professional services by someone who is an insurance agent. It also excludes coverage for advertising injury arising from (1) breach

4

of contract (with certain exceptions not relevant here) and (2) "the failure of goods, products or services to conform with advertised quality or performance."

## II.  DISCUSSION

### A.  Governing Standards

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992).  In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).  However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

An insurer's obligation to defend its insured is broader than its duty to indemnify its insured.  E.g., McCormack Baron Mgt. Servs., Inc. v. American Guarantee & Liability Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999) (en banc).  "The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependant on the probable liability to pay based on the facts ascertained through trial.  The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." Id. (quotation omitted).  "[T]he duty to defend is triggered if there are facts that could potentially bring the underlying claim

5

within coverage. Furthermore, any uncertainty as to the policy's coverage should be decided in favor the insured." Liberty Mutual Ins. Co. v. FAG Bearings Corp., 153 F.3d 919, 924 (8th Cir. 1998). "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." McCormack Baron, 989 S.W.2d at 170-71. Moreover, "[t]he insurer cannot ignore safely actual facts known to it or which could be known from reasonable investigation. Thus, an insurer has an obligation to look beyond the allegations made in the petition against its insured to facts known by the insurer or facts which can be discovered through a reasonable investigation, before declining to defend." United Fire & Cas. Co. v. Gravette, 182 F.3d 649, 657 (8th Cir. 1999) (quotations omitted). Once triggered, the duty to defend extends to the entire suit, even if there are claims that would not trigger the duty to defend. Scottsdale Ins. Co. v. Ratliff, 927 S.W.2d 531, 532, 534 (Mo. Ct. App. 1996) (Blackmar, Sr. J.).

Because the duty to defend is broader than the duty to indemnify, the absence of the former necessarily means the absence of the latter. E.g., Shelter Mut. Ins. Co. v. Ballew, 203 S.W.3d 789, 792 n.4 (Mo. Ct. App. 2006). The obligation to indemnify depends upon "the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." McCormack Baron, 989 S.W.2d at 173.

### B. Plaintiffs' Arguments

Plaintiffs only seek partial summary judgment. In a rather creative argument, Plaintiffs contend Defendant had a duty to defend because the Underlying Complaint could be understood as raising a claim for personal injury because the Underlying Complaint alleged the Burgess Defendants trespassed or intruded upon their customers' seclusion. Plaintiffs present three independent theories: (1) the Underlying Complaint could be understood as asserting a claim for trespass upon chattel, (2) the Underlying Complaint could be understood as asserting a claim for trespass onto property, and (3) the Underlying Complaint could be understood as asserting a claim for

6

invasion of the right to privacy.  No reading of the Underlying Complaint suggests any basis for crediting these theories.  In addition to the absence of any such allegations in the Underlying Complaint, the court observes the law would not allow such claims in any event.  For instance, the tort of trespass to chattels is very similar to the tort of conversion; the significant difference is that conversion is the wrongful exercise of dominion over property, while trespass to chattels requires proof of an unlawful taking.  Tubbs v. Delk, 932 S.W.2d 454, 456 (Mo. Ct. App. 1996).  Both torts require a chattel to be involved, and money is not a chattel unless one is referring to a specific fund of money, a particular piece of currency, or money that is intended for one purpose but is misappropriated for another use.  E.g., Gadberry v. Bird, 191 S.W.3d 673, 676 (Mo. Ct. App. 2006); In re Estate of Boatright, 88 S.W.3d 500, 506 (Mo. Ct. App. 2002).

      Plaintiffs' describe the Underlying Complaint as asserting "a claim of trespass to the Witte Plaintiffs' mailboxes and telephones and unreasonably intruded upon the seclusion fo the Witte Plaintiffs in that the mail and telephone calls" were continuously sent.  This reasoning is tortured at best, and it is sufficient to say that (1) no such claims were made and (2) such a claim would be legally frivolous.

      Finally, Plaintiffs contend the Underlying Complaint charged them with trespassing in their customers' homes because some of the discussions occurred there.  Nothing in the Underlying Complaint suggests they were in their customers' homes without their customers' consent.  More importantly, trespass on real property is a Personal Injury only if it is performed "by or on behalf of [the premise's] owner, landlord, or lessor."

      The issue is not whether the customers could have asserted additional torts.  The issue is: what was Defendant being asked to defend?  This requires consideration of that which was actually claimed in the Underlying Complaint.  No amount of reasoning or investigation by Defendant will justify concluding the Underlying Complaint accused Plaintiffs of trespassing on real property, taking chattels, or intruding upon the privacy of their customers.  Similarly, no amount of post-hoc elaboration by the plaintiffs in the Underlying Complaint will substantiate Plaintiffs' arguments.  Plaintiffs are not entitled to partial summary judgment.

7

## C. Defendant's Arguments

Defendant contends it is entitled to summary judgment on all of Plaintiffs' claims. The parties seem to agree (and the Court holds) Counts I - V and Count VII are excluded from coverage. Counts I - V allege intentional torts or violations of law and are thus excluded. Count VII asserts a claim for breach of fiduciary duty, which arises from "the rendering of or the failure to render professional services" by an insurance agent and is thus excluded. This leaves, then, Count VI – negligent misrepresentation. Regardless of whether a claim for negligent misrepresentation is the type of claim that can be covered, there are two independent explanations as to why Defendant did not have a duty to defend.

The first has been alluded to already: the exclusion for claims arising from "the rendering of or the failure to render professional services" by an insurance agent. Count V of the Underlying Complaint alleges the Burgess Defendants "supplied information . . . that was false" during the course of "business transactions in attempts to induce the Investors to purchase viatical securities." Underlying Complaint, ¶¶ 109-10. Even though the claim is one for negligence, it arises from the professional services Plaintiffs provided in their capacity as insurance agents and is excluded from coverage.[1]

The second explanation focuses on the lack of an injury that is covered by the policy. The Underlying Complaint does not allege slander, libel, product disparagement, misappropriation of advertising ideas or copyright infringement. As discussed previously, it also does not allege an injury arising from the violation of someone's right to privacy. Therefore, an Advertising Injury is not present. The Underlying Complaint does not allege false arrest, malicious prosecution, or wrongful entry or eviction by or on behalf of an owner or landlord. As discussed previously, it also does not allege an injury arising from the violation of a person's right to privacy. Consequently, a Personal Injury has not been alleged. Finally, as discussed previously, there is no physical injury

---

[1] Plaintiffs do not suggest they were not acting as insurance agents, which is just as well because if they were not acting as insurance agents then their actions would not have been within the scope of the business and thus not covered.

8

to tangible property or loss of use of tangible property within the meaning of the policy, so there has been no Property Damage.

### III. CONCLUSION

For these reasons, Plaintiffs' Motion for Partial Summary Judgment (Doc. # 45) is denied, and Defendant's Motion for Summary Judgment (Doc. # 44) is granted. Defendant's Motion to Strike (Doc. # 66) is denied as moot.

IT IS SO ORDERED.

                                                 /s/ Ortrie D. Smith
                                                 ORTRIE D. SMITH, JUDGE
DATE: May 15, 2007                      UNITED STATES DISTRICT COURT